

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIFTH THIRD BANK, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> AUTOMOBILI LAMBORGHINI S.P.A., ) <br> ) <br> Defendant. ) | No. 09 C 3253 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

The Defendant, Automobili Lamborghini S.P.A. ("Lamborghini") used the Automated Clearing House (ACH) system to withdraw $233,860 from Plaintiff Fifth Third Bank's accounts. Lamborghini withdrew the funds as compensation for a car it had delivered to Luxury Motors Gold Coast, Inc., which once had a line of credit at Fifth Third. Fifth Third seeks to recover the funds, pressing claims of unjust enrichment and breach of contract. Both parties move for summary judgment.

I. Factual Background

Luxury Motors agreed to a New Vehicle Floor Plan Loan and Security Agreement with Fifth Third in August 2006. (Def. 56.1(b)(3)(1) St. Ex. A ("Floor Plan Agreement")). Among other things, Fifth Third agreed to make available to Luxury Motors a line of credit to acquire new vehicles. (Floor Plan Agreement ¶ 1). The Floor Plan Agreement also granted Fifth Third a security interest in those vehicles. (Floor Plan Agreement ¶ 3). In order to keep apprised of its fluctuating security interest, the Agreement required Luxury Motors to document the invoice prices of the new

1

vehicles it obtained with this line of credit and to keep a record of its vehicle inventory. (Floor Plan Agreement ¶¶ 3,4,10). In this way, vehicles were added to the "floor plan" when credit was extended and removed from the floor plan when they were sold and the credit repaid. In order to ensure the accuracy of the line of credit, Fifth Third retained the right to audit Luxury Motors' inventory. (Floor Plan Agreement ¶ 6).

Among the vehicles Luxury Motors sold were those manufactured by Lamborghini. (Pl. 56.1(a) St. ¶ 11). In order to facilitate Luxury Motors' purchase of vehicles from Lamborghini, Fifth Third informed Lamborghini in March 2007 that Luxury Motors had established a $2,000,000 line of credit with it. (Siciliano Decl. Ex. 2 ("March 2007 Letter"))[1]. The March 2007 letter authorized Lamborghini to use the ACH system to draft funds against this line of credit. (March 2007 Letter). The guidelines for the drafts instructed Lamborghini to identify the vehicles shipped or delivered to Luxury Motors and required Lamborghini to furnish a copy of the invoice identifying the vehicle to Fifth Third. (March 2007 Letter). Fifth Third could, upon notice to Luxury Motors, withdraw or suspend the commitment to pay Lamborghini for subsequent shipments of vehicles to Luxury Motors. (March 2007 Letter). However, it stated that "[d]rafts for vehicles shipped prior to the effective date of our withdrawal or suspension of this commitment will be honored irrespective of the date of the draft and/or date of receipt of such draft by us." (March 2007 Letter).

In June 2007, an employee at Fifth Third noticed an ACH draft without an accompanying invoice from Lamborghini. (Pl. St. ¶¶ 12-13). The employee promptly wrote to Lamborghini informing them of the problem and noting that it had not been provided the VIN and other

---

[1] The parties dispute the admissibility of the March 2007 letter. The Court will take up their dispute in its discussion.

identifying information of the vehicle sold to Luxury Motors. (Horner Decl. Ex. 1). The employee explained that, without the information, Fifth Thrid could not add the vehicle to Luxury Motors' floor plan, nor could it properly track both Luxury Motors' debt and its collateral. (Horner Decl. Ex. 1). The employee instructed Lamborghini that it had until noon the following day to supply the missing information or Fifth Third would return the ACH and "pull the funds back from Lamborghini." (Horner Decl. Ex. 1). The employee requested that, with regard to future ACH drafts, Lamborghini send by e-mail or fax a copy of the invoice identifying the vehicle sold to Luxury Motors. (Horner Decl. Ex. 1). The subsequent e-mail exchange between Fifth Third and Lamborghini employees seems to have straightened out any issue regarding Luxury Motors' line of credit under the Floor Plan Agreement.

In July 2008, Fifth Third terminated Luxury Motors' line of credit. (Pl. St. ¶ 16). Luxury Motors then obtained a line of credit with First Chicago Bank and Trust, and made Lamborghini aware of the change in its creditor. (Pl. St. ¶¶ 19, 39). At the time, Fifth Third's floor plan for Luxury Motors contained nine Lamborghini vehicles. (Pl. St. ¶ 20). First Chicago paid Fifth Third for the nine Lamborghini vehicles and transferred them from Fifth Third's floor plan to its floor plan. (Pl. St. ¶ 20). Thus, so far as Fifth Third was concerned, it believed the line of credit it had extended to Luxury Motors was closed.

Shortly after Fifth Third terminated Luxury Motors' line of credit, Lamborghini incorrectly drafted Fifth Third, and not First Chicago, for one of Luxury Motors' purchases. (Pl. St. ¶¶ 22-23). After the mistake was brought to its attention, First Chicago wired Fifth Third funds to reimburse it for Lamborghini's error. (Pl. St. ¶ 24). Over the next several months, Luxury Motors purchased

four vehicles from Lamborghini and, for each of the four, Lamborghini used the ACH system to draft First Chicago for reimbursement. (Pl. St. ¶ 25).

In September 2008, however, Lamborghini again drafted Fifth Third via the ACH system. (Pl. St. ¶ 26). Unlike prior drafts, Lamborghini did not notify Fifth Third of its draft either by sending a separate e-mail or by identifying the vehicle associated with the withdrawal. (Pl. St. ¶¶ 27-28). Instead, almost three weeks later, a Fifth Third employee noticed the ACH transaction, which by that point could not be undone. (Pl. St. ¶ 29). Fifth Third contacted Lamborghini about the draft, but received no response. (Pl. St. ¶¶ 30-32).

More than two months later, Fifth Third learned that the draft was made in connection with a vehicle with a VIN ending in 6926 ("6926 Vehicle") and an invoice number 101235. (Pl. St. ¶ 33). Lamborghini had delivered the vehicle as a demonstration model to Luxury Motors in January 2008, when Luxury Motors' line of credit with Fifth Third was still active. (Pl. St. ¶ 25; Horner Decl. Ex. 5; Curry Decl. ¶ 3 & LMHD 313; Siciliano Decl. Ex. 3). Under the terms of the invoice, Luxury Motors received the vehicle without charge for 210 days, after which it would owe Lamborghini for the vehicle. (Curry Decl. ¶ 3; Sicialiano Decl. Ex. 3). When Lamborghini drafted Fifth Third for the 6926 Vehicle, Luxury Motors had exhausted its line of credit with First Chicago.[2] (Pl. St. ¶ 37).

Lamborghini has since refused to return the funds, claiming that the March 2007 letter authorized the draft.

II. Standard of Review

---

[2] It is not clear whether Lamborghini first attempted to draft First Chicago prior to drafting Fifth Third.

The standard for granting summary judgment under Federal Rule of Civil Procedure 56(c)(2) is familiar. Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists where sufficient evidence would allow a jury to return a verdict for that party. *AA Sales & Assoc., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 608-09 (7th Cir. 2008). In ruling on a motion for summary judgment, the court must resolve all disputes and draw all inferences in favor of the non-moving party. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). The fact that the parties have filed cross-motions does not alter this standard; rather, when evaluating each party's motion, the court resolves disputes and draws inferences in favor of the party against whom the motion under consideration is made. *Cogswell v. CitiFinancial Mtge Co.*, 624 F.3d 395, 398 (7th Cir. 2010).

III. Analysis

Count I of Fifth Third's complaint seeks restitution based on a theory of unjust enrichment. The theory of unjust enrichment is based on an implied contract in law. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill.2d 484, 500, 752 N.E.2d 1090, 1102 (Ill. 2001). The action is based upon the principle that no one ought to enrich itself unjustly at the expense of another. *Id.* To prove a claim for unjust enrichment, a plaintiff must show the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violates the principles of justice, equity, and good conscience. *Galvan v. Northwestern Mem'l Hosp.*, 382 Ill. App. 2d 259, 271, 888 N.E.2d 529 (Ill. App. Ct. 2008). A plaintiff pursuing a claim of unjust enrichment, however, asks the court to remedy the fact that the defendant was enriched by imposing a contract

where there was no contract. *Fleissner v. Fitzgerald*, 403 Ill. App. 3d 355, 937 N.E.2d 1152, 1159 (Ill. App. Ct. 2010). Thus, where an express contract governs the relationship between the parties, the theory generally does not apply. *Martis v. Pekin Mem'l Hosp.*, 395 Ill. App. 3d 943, 952, 915 N.E.d2d 598 (Ill. App. Ct. 2009).

Where an unjust enrichment claim is based upon a payment made due to a unilateral mistake of fact, however, Illinois courts sometimes hold that such money may be recovered in an unjust enrichment claim, even where an express contract governs the relationship between the parties. *See, e.g., Bank of Naperville v. Catalano*, 86 Ill. App. 3d 1005, 1008, 408 N.E.2d 441 (Ill. App. Ct. 1980); *Board of Educ. of the City of Chicago v. Holt*, 41 Ill. App. 3d 625, 626, 354 N.E.2d 534 (Ill. App. Ct. 1976); *Metro. Sanitary Dist. of Greater Chicago v. Anthony Pontarelli & Sons, Inc.*, 7 Ill. App. 3d 829, 844, 288 N.E.2d 905 (Ill. App. Ct. 1972). Illinois courts recognize implied contracts based on mistaken payment as an "'elemental principle of law'" that a person should not receive money that belongs to another. *Anthony Pontarelli & Sons, Inc.*, 7 Ill. App. 3d at 845 (quoting *Bd. of Trustees of Police Pension Fund of Glen Ellyn v. Village of Glen Ellyn*, 337 Ill. App. 183, 195, 85 N.E.2d 473 (Ill. App. Ct. 1949).

For example, in *Anthony Pontarelli & Sons, Inc.*, a contractor agreed to build a sewer for a municipality. After the municipality discovered that the contractor billed it for over $1 million dollars of work beyond what the contract called for, it pressed both a breach of contract claim and an unjust enrichment claim based on the municipalities mistaken payment. *Anthony Pontarelli & Sons, Inc.*, 7 Ill. App. 3d at 832-33. In *Holt*, a school board discovered that it had mistakenly paid a teacher after she had retired and pressed an unjust enrichment claim even though a contract governed the relationship between the district and the teacher. *Holt*, 41 Ill. App. 3d at 626-27. In

6

both cases, the payee completed its obligations under the contract and despite having been fully compensated under the terms of the contract received additional compensation, by mistake, above and beyond what the terms of the contract provided. *Holt*, 41 Ill. App. 3d at 626-27; *Anthony Pontarelli & Sons, Inc.*, 7 Ill. App. 3d at 832-33. In that sense, the payee did not, in essence, "breach" the contract — for each payee performed its obligations under the contract (though in *Anthony Pontarelli & Sons, Inc.* the payee may not have performed those obligations satisfactorily) — but rather accepted a benefit to which it was not entitled after the contract should have been completed. Thus, despite the fact that a contract governed the relationship between the parties the unjust enrichment claim stood apart from that contract.

Thus, under Illinois law, a party may pursue an unjust enrichment claim for a mistaken payment, even where a contract governs the relationship between the parties, if the payee is not, in fact, entitled to payment. *Wilson v. Moore*, 153 Ill. App. 3d 15, 18-19, 504 N.E.2d 1383 (Ill. App. Ct. 1987). Such an unjust enrichment claim, however, necessarily entails an examination of the terms of the contract to determine whether the payee is entitled to the payment. This of course makes sense, for if Lamborghini drafted against Luxury Motors' line of credit pursuant to the terms of a contract with Fifth Third and did in fact deliver a vehicle to Luxury Motors for which it was entitled to payment, then Lamborghini has not been unjustly enriched at all. On the other hand, if the contractual relationship between Fifth Third and Lamborghini had ended, Lamborghini was not entitled to receive a payment from Fifth Third at all. In this sense, Fifth Third's unjust enrichment claim and its contract claim are bound together and require the Court to interpret the terms of the parties' agreement.

Both parties insist that the undisputed facts require the Court to grant summary judgment in their favor on Fifth Third's unjust enrichment claim. Lamborghini suggests that contract allowed

7

it to draft against Luxury Motors' line of credit for any vehicle delivered prior to the termination of Lamborghini's drafting privileges. Thus, Lamborghini argues that it neither breached the contract nor was unjustly enriched because the demonstration vehicle was delivered to Luxury Motors several months prior to the date on which Fifth Third terminated Luxury Motors' line of credit. On the other hand, Fifth Third insists that Lamborghini's authorization to draft against the line of credit ended when the line of credit was terminated. Fifth Third argues that because Luxury Motors' line of credit had terminated any draft made by Lamborghini was a form of mistaken payment — like the excess payment given to the teacher in *Holt* — and that Lamborghini was thus unjustly enriched. The problem with each parties' argument is that neither properly places the terms of the contract before the Court, and those terms are essential to the Court's inquiry.

In support of its argument, Lamborghini points to the March 2007 letter as evidence of the parties' agreement. That letter states that "[d]rafts for vehicles shipped prior to the effective date of our withdrawal or suspension of this commitment will be honored irrespective of the date of the draft." This clause suggests that Lamborghini was in fact entitled to draft against Luxury Motors' line of credit even though Fifth Third had terminated it because Lamborghini delivered the vehicle prior to that termination. Fifth Third, however, argues that the Court should not rely upon the March 2007 letter because Lamborghini has not provided sufficient evidence to prove that it is, in fact, the contract between the parties. In determining whether there exists a genuine issue of material fact, a court may consider only evidence that would be admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). The evidence need not be admissible in form (a party may, for example, rely on an

8

affidavit, which generally would not be admissible at trial), but must be admissible in content. *Stinnett*, 301 F.3d at 613.

The March 2007 letter itself is hearsay, and normally inadmissible unless it falls within one of the exceptions to the hearsay rule, such as the business records exception. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (discussing exceptions to admissibility rule); Fed. R. Evid. 803(6). To be authentic as a business record under Fed. R. Evid. 803(6), a document must have sufficient trustworthiness to be considered reliable. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). To demonstrate such trustworthiness and reliability at the summary judgment stage, a party must attach the affidavit of a person who can speak from personal knowledge about the record and qualified to introduce the record as evidence at trial. *Id.*

Here, however, Lamborghini makes no real effort to lay proper foundation for the March 2007 letter. To authenticate the March 2007 letter, Lamborghini offers the affidavit of one of its Regional Managers, Gianluca Siciliano. Siciliano avers only that he has "been shown the correspondence" between Lamborghini's attorneys and Fifth Third's attorneys related to the March 2007 letter and that he can "confirm that the contract is authentic." At best, Siciliano avers only to the fact that the March 2007 letter is a document that was exchanged by the parties during the process of discovery. He does not state that he was aware of the negotiations between Lamborghini and Fifth Third that resulted in the agreement between the parties. Nor does he state that the March 2007 letter reflects those terms. Nor does Siciliano lay any foundation for the letter as a business record. In short, Siciliano's statement falls far short of demonstrating personal knowledge of the details of the agreement between Fifth Third and Lamborghini necessary to authenticate the letter. His statement that the "contract is authentic" is little more than a cursory, self-serving statement

based not on personal knowledge but upon hopeful speculation. The Court finds that Lamborghini has not offered sufficient evidence of the March 2007 letter's trustworthiness to rely upon it at this stage of the proceedings. Therefore, Lamborghini's underlying premise — that the contract between the parties allowed it to draft on Luxury Motors' terminated line of credit because the vehicle was delivered prior to the termination of that line of credit — is without evidentiary support and thus the Court cannot grant their Motion for Summary Judgment on Fifth Third's unjust enrichment claim.[3]

On the other hand, Fifth Third omits reference to the terms of the contract entirely, perhaps in an effort to avoid the rule precluding unjust enrichment claims where a contract governs the parties' relationship. Yet, in pursuing its unjust enrichment claim, Fifth Third makes clear that a contract between the parties did exist. It points to the declarations of two employees to suggest that Lamborghini's authorization to draft against the line of credit ended when the line of credit was terminated. Of course such declarations presuppose the existence of an agreement in the first place (otherwise, it could not "end"). The declarations, however, do not identify the terms of the contract, but rather offer the employees' legal interpretation of the contract. The interpretation of a contract, however, is a question of law to be decided by the Court. *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). As noted earlier, however, Fifth Third's mistaken payment claim requires the Court to assess whether Lamborghini received money that it was not entitled to receive. And the terms of the contract govern whether Lamborghini was entitled to the disputed $233,860. Without evidence of the terms of the parties' agreement, the Court cannot resolve that threshold issue and cannot grant Fifth Third's Motion for Summary Judgment on its unjust enrichment claim.

---

[3] Lamborghini also moves for summary judgment on Fifth Third's breach of contract claim. Their argument in support also depends on the March 2007 letter and so the Court cannot resolve that claim on summary judgment.

Finally, Lamborghini argues that the Court should grant it summary judgment on Count III of Fifth Third's Complaint, which purports to state a claim that Lamborghini breached the covenant of good faith and fair dealing. As Lamborghini points out, the covenant of good faith and fair dealing does not impose additional obligations upon parties beyond those that they bargain for. *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995). Rather, it guides the construction of explicit terms of that contract. *Id.*; *see also Midwest Builder Distributing, Inc. v. Lord and Essex, Inc.*, 383 Ill. App. 3d 645, 671-73, 841 N.E.2d 1 (Ill App. Ct. 2007) (noting that breach of the covenant of good faith and fair dealing could be used as tool for interpreting written terms of the contract or operate as a waiver of a condition precedent). Fifth Third's argument that it can allege a breach of the covenant of good faith and fair dealing in association with a breach of contract claim is correct — the factual allegations its makes regarding Lamborghini's conduct may be relevant to its breach of contract claim. That does not mean, however, that those allegations should be stated in a separate count to its Complaint. The Court GRANTS Lamborghini's Motion for Summary Judgment on Count III of the Amended Complaint, but grants Fifth Third leave to amend the complaint to incorporate the factual allegations in Count III into Count II of its complaint.

IT IS SO ORDERED.

1/26/11
Dated

Hon. William J. Hibbler
U.S. District Court